# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Farok Abdulmajid Hamod, and Orwa Ali Al-Saadoon, | Case No. 16-cv-1191 (JRT/TNL) |
| Plaintiffs, | |
| v. | **REPORT & RECOMMENDATION** |
| John F. Kelly,[1] Secretary of the U.S. Department of Homeland Security; James McCament,[2] Acting Director, U.S. Citizenship and Immigration Services; Leslie Tritten, St. Paul Field Office Director, USCIS; David Douglas, Central Region District Director, USCIS; and Andrew McCabe,[3] Acting Director, Federal Bureau of Investigation, | |
| Defendants. | |

Herbert A. Igbanugo and Jason A. Nielson, Igbanugo Partners Int'l Law Firm, PLLC, 250 Marquette Avenue, Suite 1075, Minneapolis, MN 55401 (for Plaintiffs); and

Christopher W. Dempsey, U.S. Department of Justice, P.O. Box 868, Ben Franklin Station, Washington, DC 20044 (for Defendants).

---

[1] John F. Kelly became the Secretary of the U.S. Department of Homeland Security on January 20, 2017. *Secretary of Homeland Security*, U.S. Dep't of Homeland Sec., https://www.dhs.gov/secretary (last visited April 21, 2017). Secretary Kelly is automatically substituted for the previous Secretary Jeh Johnson. Fed. R. Civ. P. 25(d) (public officer's successor is automatically substituted as party when officer ceases to hold office while action is pending).

[2] James McCament is the current Acting Director of the U.S. Citizenship and Immigration Services ("USCIS") division of the U.S. Department of Homeland Security. *James McCament, Acting Director, U.S. Citizenship & Immigration Services*, U.S. Dep't of Homeland Sec., https://www.uscis.gov/about-us/leadership/james-mccament-acting-director-us-citizenship-and-immigration-services (last visited April 21, 2017). Acting Director McCament is automatically substituted for the previous Director Leon Rodriguez. Fed. R. Civ. P. 25(d).

[3] Andrew McCabe became Acting Director of the Federal Bureau of Investigation on May 9, 2017. *Andrew McCabe (Acting), May 9, 2017 – Present, Fed. Bureau of Investigation*, https://www.fbi.gov/history/directors/andrew-mccabe (last visited June 12, 2017). Acting Director McCabe is automatically substituted for the previous Director James Comey. Fed. R. Civ. P. 25(d).

## I. INTRODUCTION

This matter is before the undersigned United States Magistrate Judge on Defendants' Motion to Dismiss Amended Complaint (ECF No. 25). This motion has been referred to the undersigned for a report and recommendation to the district court, the Honorable John R. Tunheim, Chief District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1. (ECF No. 35.) The parties have agreed that this matter can be considered on the papers without the need for a hearing. (ECF Nos. 36, 37.)

Based upon the record, memoranda, and the proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss Amended Complaint (ECF No. 25) be **GRANTED**.

## II. BACKGROUND

This case is the next chapter in pursuit of naturalization by Plaintiffs Farok Abdulmajid Hamod ("Hamod") and his wife Orwa Ali Al-Saadoon ("Al-Saadoon"). "Hamod and Al-Saadoon are natives and citizens of Iraq." *Al-Saadoon v. Holder*, No. 12-cv-2949 (PAM/TNL), 2014 WL 5362890, at *1 (D. Minn. Oct. 21, 2014) (*Al-Saadoon I*). "Hamod is an accomplished and respected Sheikh and Islamic scholar. He serves the community by, among other things, leading religious ceremonies, offering spiritual counseling, and publishing academic works." *Id.* Hamod entered the United States in 1999 as a nonimmigrant religious worker to provide "religious worker services" to Al-Amal School, located in Fridley, Minnesota. *Id.* (Am. Compl. ¶ 10, ECF No. 21.) "Al-Saadoon . . . and their five children were derivatives of Hamod's visa and accompanied

him to the [United States]."   (Am. Compl. ¶ 11.)   Their sixth child was born in Minnesota.   (Am. Compl. ¶ 11.)   Since approximately 2007, Hamod and Al-Saadoon have sought to become naturalized citizens of the United States.   (Am. Compl. ¶ 18.)

Previously, Hamod and Al-Saadoon sought *de novo* review of USCIS's 2010 denial of their naturalization applications.   *Al-Saadoon I*, 2014 WL 5362890, at *1, 3. The district court[4] concluded that Hamod had been "unlawfully admitted to permanent residence status because he engaged in unauthorized employment by working for the [Islamic Cultural Community Center ("ICCC")] when he was authorized to work only for Al-Amal School and because the ICCC did not file a new petition and obtain authorization for that work."   *Id.* at *6.   "Because Hamod technically engaged in unauthorized employment while on a nonimmigrant visa and thus was unlawfully admitted to permanent residence status, the [district c]ourt . . . concluded that he [wa]s . . . ineligible for naturalization."   *Id.* at *7.   And, "[s]ince Al-Saadoon was admitted to permanent residence status as a derivative beneficiary of Hamod, she was unlawfully admitted and [wa]s likewise ineligible for naturalization."   *Id.*   Accordingly, the district court affirmed the denial of Hamod and Al-Saadoon's naturalization applications.   *Id.* Hamod and Al-Saadoon appealed to the Eighth Circuit Court of Appeals.   *Al-Saadoon v. Lynch*, 816 F.3d 1012, 1013 (8th Cir. 2016).   The Eighth Circuit held that "the district court did not clearly err in finding that Hamod accepted unauthorized employment with the ICCC in violation of his visa" and affirmed the district court's ruling.   *Id.* at 1015 (footnote omitted).

---

[4] The Honorable Paul A. Magnuson, District Judge for the United States District Court for the District of Minnesota.

Meanwhile, in 2014, one of Hamod and Al-Saadoon's daughters, who is a citizen of the United States, filed an I-130 Petition for Alien Relative on behalf of each of her parents. (Am. Compl. ¶ 41; Ex. G at 1, 5, ECF No. 1-7.) Hamod and Al-Saadoon subsequently each filed an I-485 Application to Register Permanent Residence or Adjust Status. (Am. Compl. ¶ 41; Ex. G at 2, 6.)

In 2015, Hamod and Al-Saadoon each filed an N-400 Application for Naturalization and an I-485A[5] Adjustment of Status Under Section 245(i). (Am. Compl. ¶ 42; Ex. G at 3-4, 7-8.) Over approximately the next 18 months, counsel for Hamod and Al-Saadoon "inquired numerous times about these pending applications." (Am. Compl. ¶ 43; *see* Ex. H, ECF No. 1-8.) Towards the end of August 2016, Hamod and Al-Saadoon were "interviewed by USCIS in Bloomington, Minnesota[,] in connection with their applications for naturalization." (Am. Compl. ¶ 44.) Hamod and Al-Saadoon were also tested and passed "the English language and history and civ[ics] portion of the N-400 adjudication process that same day." (Am. Compl. ¶ 46.) In early September 2016,[6] the N-400 applications for naturalization were denied "on the grounds that [Hamod and

---

[5] The I-485A form is Supplement A to Form I-485. *I-485 Supplement A, Supplement A to Form I-485, Adjustment of Status Under Section 245(i)*, U.S. Citizenship & Immigration Servs., U.S. Dep't Homeland Sec., https://www.uscis.gov/i-485supa (last visited April 21, 2017).

[6] The record contains decisions from USCIS dated September 6 and October 20, 2016. (*See* Exs. A, B to Pls.' Opp'n, ECF Nos. 32-1, 32-2.) Defendants explain:

> [T]he initial written determinations issued to [Hamod and Al-Saadoon] on September 6, 2016, were returned to USCIS as undeliverable due to an address error. However, these determinations were received by their attorney of record. To be sure, however, USCIS issued a second copy of the same determination with [the] corrected address on or about October 20, 2016. These did not constitute new determinations. They are carbon copies of the original determinations issued by USCIS on September 6, 2016.

(Defs.' Reply at 3 n.2, ECF No. 33.) It appears that the second and third digits of the four-digit house number had been inverted.

4

Al-Saadoon] did not lawfully adjust status."  (Am. Compl. ¶ 47; *see* Ex. A to Pls.'
Opp'n.[7])

Hamod and Al-Saadoon filed the instant matter, challenging the denial of their
applications.  They allege that USCIS "never formally adjudicated" their I-485A
supplemental forms and issued a decision that they "do not merit 245(i) *nunc pro tunc*
relief without providing any plausible reasons in law or equity."  (Am. Compl. ¶ 48.)
Hamod and Al-Saadoon expressly state that they "have not filed . . . Forms N-336,
requesting USCIS to review the grounds of their N-400 denials."[8]  (Am. Compl. ¶ 49.)
Hamod and Al-Saadoon allege that pursuing an administrative appeal with USCIS would
be futile.  (Am. Compl. ¶¶ 49, 61.)  According to Hamod and Al-Saadoon, "it is clear
USCIS would simply 'rubber-stamp' the denial, as the Controlled Application Review
and Resolution Program (CARRP) forbids USCIS officers from granting the requested
benefit even if the applicant satisfies all statutory and regulatory criteria, or requires
supervisory approval and concurrence from a senior level USCIS official."  (Am. Compl.
¶ 49; *see* Ex. I, ECF Nos. 1-9 through 1-11.)

Hamod and Al-Saadoon allege that they "took lawful, available measures in the
form of filing Forms I-485A to remedy the Defendants' infirm prior denials," and,
"[w]hen properly filed they are routinely granted, and this is common knowledge."  (Am.
Compl. ¶ 57.)  Despite the allegation that their I-485A supplemental forms were never

---

[7] Because Defendants have asserted a factual attack on the existence of subject matter jurisdiction, the Court has considered matters outside of the pleadings.  *See infra* Section III.A.

[8] The N-336 form is used "[t]o request a hearing before an immigration officer on the denial of [a] Form N-400, Application for Naturalization."  *N-336, Request for a Hearing on a Decision in Naturalization Proceedings (Under Section 336 of the INA)*, U.S. Citizenship & Immigration Servs., U.S. Dep't of Homeland Sec., https://www.uscis. gov/n-336 (last visited April 21, 2017).

adjudicated, (Am. Compl. ¶ 48), Hamod and Al-Saadoon seek "[r]eview of the [d]enial of 245(i) *[n]unc [p]ro [t]unc*" relief," asserting that review of the alleged unlawful denial of their I-485A supplemental forms "is outside the ambit of direct Form N-400 denial review permitted pursuant to 8 U.S.C. § 1421(c)," (Am. Compl. at 13, ¶ 58). Hamod and Al-Saadoon also seek *de novo* review of their naturalization applications pursuant to 8 U.S.C. § 1421(c), and request that their naturalization applications be granted. (Am. Compl. ¶¶ 59-63.)

Defendants have moved to dismiss this matter for lack of subject matter jurisdiction and, alternatively, for failure to state a claim. In their opposition to Defendants' motion, Hamod and Al-Saadoon indicate that they have sought a hearing before an immigration officer by filing N-336 forms.[9] (Pls.' Opp'n at 11; Ex. C to Pls.' Opp'n, ECF No. 32-3.) As far as this Court is aware, these requests remain pending, and there has been no decision following a hearing before an immigration officer regarding the applications at issue.

### III. ANALYSIS

Defendants move to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6). Defendants argue that Hamod and Al-Saadoon are statutorily required to "complete the administrative appeal process and receive a final decision from [USCIS] before seeking judicial review." (Mem. in Supp. at 1-2, ECF No. 27.) Defendants request that this action be dismissed "for a lack of subject-matter jurisdiction, or, in the

---

[9] *Supra* n.8.

6

alternative, for failure to state a claim upon which relief can be granted." (Defs.' Mem. in Supp. at 3 (footnote omitted).)

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). As the parties asserting jurisdiction, Hamod and Al-Saadoon bear the burden to establish the existence of subject matter jurisdiction. *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 917 (8th Cir. 2015).

### A. Defendants Have Asserted a Factual Attack

When subject matter jurisdiction is challenged under Rule 12(b)(1), the Court must first decide whether a facial or factual attack has been asserted as the nature of the attack dictates the appropriate legal standard. *Branson Label*, 793 F.3d at 914; *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). "In a facial attack, the court merely needs to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Branson Label*, 793 F.3d at 914 (quotation omitted). "Accordingly, 'the court restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.* (quoting *Osborn*, 918 F.2d at 729 n.6) (internal citation omitted). "Conversely, in a factual attack, the existence of subject matter jurisdiction is challenged in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* at 914-15 (quotation omitted). As a result, with a factual attack, the nonmoving party does "not enjoy the benefit of the allegations in its pleadings

being accepted as true by the reviewing court." *Id.* at 915; *accord Osborn*, 918 F.2d at 729 n.6.

While Defendants do not expressly assert that they are bringing a factual attack, their arguments are in the nature of a factual challenge. Defendants assert that this Court lacks subject matter jurisdiction because Hamod and Al-Saadoon have not yet exhausted their administrative remedies. In essence, Defendants contend that "under the facts as they *actually exist* the court does not have subject-matter jurisdiction." *Najbar v. United States*, 723 F. Supp. 2d 1132, 1133 (D. Minn. 2010). Because Defendants have brought a factual attack, this Court may consider matters outside the pleadings in considering Defendants' motion under Rule 12(b)(1) without converting the motion into a motion for summary judgment. *Bartholomew v. Avalon Capital Grp., Inc.*, 828 F. Supp. 2d 1019, 1025 (D. Minn. 2009); *see Branson Label*, 793 F.3d at 915; *Osborn*, 918 F.2d at 729 n.6.

### B. Section 1421(c) & Exhaustion of Administrative Remedies

When "an application for naturalization is denied, the applicant may request a hearing before an immigration officer." 8 U.S.C. § 1447(a). Significantly, section 1421(c) provides that

> [a] person whose application for naturalization under this subchapter is denied, *after a hearing before an immigration officer under section 1447(a) of this Title*, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c) (emphasis added).

8

Courts in this district have held that § 1421(c)'s administrative-hearing requirement is jurisdictional.  When an applicant seeks judicial review of the denial of his or her naturalization application either without requesting a § 1447(a) hearing or before the conclusion of the hearing process, courts in this district have concluded that the applicant has failed to exhaust the available administrative remedies and dismissed the matter for lack of jurisdiction. *Aarda v. U.S. Citizenship & Immigration Servs.*, No. 06-cv-1561 (RHK/AJB), 2008 WL 53280, at *3 (D. Minn. Jan. 3, 2008) ("In the present case the final review is available pursuant to 8 U.S.C. § 1421(c), but only after the applicant has requested a hearing before an immigration officer on the application denial pursuant to 8 U.S.C. § 1447(a).") (footnote omitted); *Farah v. Gonzales*, No. 05-cv-1944 (DWF/AJB), 2006 WL 1116526, at *2 (D. Minn. Apr. 26, 2006) ("Additionally, Farah has not requested a hearing of that denial by an immigration officer and thus has failed to exhaust his administrative remedies.  Accordingly, the Court lacks jurisdiction to reach the merits of Farah's application."); *Essa v. U.S. Citizenship & Immigration Servs.*, No. 05-cv-15449 (DSD/JJG), 2005 WL 3440827, at *2 (D. Minn. Dec. 14, 2005) ("As to petitioner Quach, CIS denied his application in August of 2005 and he has not sought a hearing of that denial by an immigration officer.  As a result, the court lacks jurisdiction to reach the merits of his petition."); *see Farghaly v. Fraizer*, 404 F. Supp. 2d 1125, 1127 (D. Minn. 2005) ("No final decision on Petitioner's application for naturalization has been rendered.  Consequently, there is no basis for a substantive review of Petitioner's application.").

9

This approach is consistent with approaches of the Second, Fifth, and Eleventh Circuit Courts of Appeals. *See, e.g.*, *Huang v. Sec'y U.S. Dep't Homeland Sec.*, 468 F. App'x 932, 935 (11th Cir. 2012) (per curiam) ("Congress explicitly allows district court review of the denial of a naturalization application only where the applicant has received an immigration hearing under § 1447(a)."); *Escaler v. U.S. Citizenship & Immigration Servs.*, 582 F.3d 288, 292 (2d Cir. 2009) ("Section 1421(c), authorizing *de novo* judicial review of the denial of an application to be naturalized, requires the exhaustion of administrative remedies prior to seeking that relief."); *Idahosa v. Bureau of Immigration & Customs Enforcement*, 111 F. App'x 293, 294 (5th Cir. 2004) (per curiam) ("Courts may review the denial of an application for naturalization only after it has been reviewed in an administrative hearing before an immigration officer."); *accord Phillips v. Boente*, No. 16-2339-cv, ___ F. App'x ____, 2017 WL 397898, at *1 (2d Cir. 2017) (failure to exhaust administrative remedies was dipositive of request for review of denial of naturalization application); *Iqbal v. Sec'y U.S. Dep't Homeland Sec.*, 190 F. Supp. 3d 322, 330 (W.D. N.Y. 2016) ("Because § 1421(c) grants a district court jurisdiction only upon a plaintiff's mandatory exhaustion of his remedies, i.e., a final denial of a plaintiff's naturalization application, and because Plaintiff's administrative remedies have not yet been exhausted, this Court does not have jurisdiction."). *See also Abuirshaid v. Johnson*, 155 F. Supp. 3d 611, 615-16 (E.D. Va. 2015) ("With respect to USCIS's adjudication of a naturalization application, Congress has clearly mandated that an alien must fully exhaust the administrative appeal process before proceeding to federal court.").

Similarly, although concluding that § 1421(c)'s administrative-hearing requirement is nonjursidictional, the Sixth Circuit Court of Appeals has held that this requirement "is best described as an administrative-exhaustion requirement, because the statutory text indicates that an applicant for naturalization who wishes to seek judicial review of the denial of the application may do so only after an administrative hearing before USCIS." *Shweika v. Dep't Homeland Sec.*, 723 F.3d 710, 716 (6th Cir. 2013). In *Shweika*, the Sixth Circuit remanded the case for further proceedings, including a determination of whether § 1421(c)'s administrative-hearing requirement had been satisfied, noting that "[n]otwithstanding our conclusion that 8 U.S.C. § 1421(c)'s administrative-hearing requirement is nonjurisdictional, it does not follow that [the applicant] was thereby free to disregard the requirement . . . ." *Id.* at 719-20. *But see Eche v. Holder*, 694 F.3d 1026, 1028 (9th Cir. 2012) (concluding § 1421(c)'s hearing requirement is "prudential, not jurisdictional" and considering merits due to "unusual circumstances" in which lawful permanent residents "were told repeatedly that they should not pursue an administrative appeal because it would be futile").

Here, it is undisputed that Hamod and Al-Saadoon's naturalization applications were denied. It is also undisputed that there has been no decision by an immigration officer following a hearing under § 1447(a). While Hamod and Al-Saadoon have requested such hearings, there is no indication that the hearings have occurred and decisions issued. Because this process has not yet been completed, Hamod and Al-Saadoon have not yet exhausted their administrative remedies.

### C. Asserted Exceptions to § 1421(c)'s Exhaustion Requirement

While not disputing that they have not exhausted their administrative remedies, Hamod and Al-Saadoon argue that this matter is nevertheless ripe for review. Their arguments generally fall into two categories: (1) it would be futile for them to proceed through the administrative-hearing process, and (2) the denial of *nunc pro tunc* relief under 8 U.S.C. § 1255(i) is properly before the Court pursuant to this Court's jurisdiction over federal questions and the Administrative Procedures Act ("APA"), *see* 28 U.S.C. § 1331 (federal-question jurisdiction), 5 U.S.C. § 704 (judicial review of agency action). The Court considers each argument in turn.

### 1. Futility

In their Amended Complaint, Hamod and Al-Saadoon allege that it would be futile to exhaust their administrative remedies because of CARRP. (Am. Compl. ¶¶ 49-52, 61.) Similarly, in their response to Defendants' motion, Hamod and Al-Saadoon state that "it is quite clear that USCIS will simply 'rubber-stamp' the denial, as CARRP forbids USCIS officers from granting the requested benefit even if the applicant satisfies all statutory and regulatory criteria, or requires supervisory approval and concurrence from a senior level USCIS official." (Pls.' Opp'n at 13.) According to Hamod and Al-Saadoon, "[t]here is nothing in this record of proceedings that remotely suggests an inclination on the part of USCIS to ever approve [their naturalization applications]." (Pls.' Opp'n at 11.)

Defendants argue there is no futility exception to the administrative-hearing process. Defendants argue that "[t]he language of section 1421(c) is clear and absolute.

It does not accord an applicant with the right to seek judicial review of a naturalization denial until, 'after a hearing before an immigration officer under section 1447(a).'" (Defs.' Mem. in Supp. at 14 (quoting 8 U.S.C. § 1421(c).)  Defendants further argue that "[b]ecause Congress has statutorily[]mandated exhaustion through section 1421(c), [Hamod and Al-Saadoon] may not utilize futility as an excuse to avoid exhausting the available administrative remedies."  (Defs.' Mem. in Supp. at 14.)

Hamod and Al-Saadoon have not pointed this Court to any specific authority in support of their futility argument.  The parties have not cited to this Court, nor has the Court's own research been able to uncover, any binding precedent on this precise issue. The majority of courts to consider the issue, however, have concluded that there is no futility exception to 8 U.S.C. § 1421(c).  These courts have reasoned that, because the exhaustion requirement is a creature of statute and Congress did not include a futility exception, no such exception exists.  *See, e.g.*, *Huang*, 468 F. App'x at 935 ("Courts are not to read 'futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.'") (quoting *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001)); *Escaler*, 582 F.3d at 292 ("When, as here, the exhaustion requirement is established by statute . . . the requirement is mandatory, and courts are not free to dispense with it.") (quotation omitted); *Abuirshaid*, 155 F. Supp. 3d at 617 ("[B]ecause Congress has mandated that a naturalization applicant must exhaust his administrative remedies before seeking judicial review, it is not appropriate for a court to 'read futility or other exceptions' into § 1421(c).") (quoting *Booth*, 532 U.S. at 741 n.6.)

As Defendants acknowledge, the Ninth Circuit Court of Appeals has held that
§ 1421(c)'s administrative-hearing requirement is "prudential, not jurisdictional." *Eche*,
694 F.3d at 1028.  In *Eche*, the Ninth Circuit concluded that § 1421(c) "is permissive,
rather than mandatory" because "[i]t provides [that] a denied applicant after a hearing
before an immigration officer may seek review of such denial before the United States
district court." *Id.* (quotation omitted).  The Ninth Circuit reasoned that § 1421(c) "does
not contain the sweeping and direct jurisdictional mandate that the Supreme Court and
we have required before concluding an exhaustion requirement is jurisdictional." *Id.*
(quotation omitted).  The Ninth Circuit then exercised its discretion to hear the appeal,
concluding that the case before it "present[ed] unusual circumstances: [appellants] were
repeatedly told that they should not pursue an administrative appeal because it would be
futile." *Id.*

Faced with this conflicting caselaw in a situation similar to the present case, a
district court in the Eastern District of Virginia held that "[a] careful reading of the
decisions reveals that the Second and Eleventh Circuits have reached the correct result
whereas the Ninth Circuit misreads the statutory text." *Abuirshaid*, 155 F. Supp. 3d at
616.  In *Abuirshaid*, the plaintiff also claimed that his naturalization application had been
unlawfully denied under CARRP.  *Id.* at 615.  The *Abuirshaid* court's analysis focused on
the text of § 1421(c) and the Supreme Court's opinion in *Booth*.

In *Booth*, the Supreme Court "stress[ed]" that it would "not read futility or other
exceptions into statutory exhaustion requirements where Congress has provided
otherwise."  532 U.S. at 741 n.6; *accord Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016)

("[A] statutory exhaustion provision stands on a different footing. There, Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to."); *cf. Liadov v. Mukasey*, 518 F.3d 1003, 1007-08 (8th Cir. 2008) ("In *Bowles* [*v. Russell*, 551 U.S. 205 (2007)], the Supreme Court explained that whether a statutory time limit is jurisdictional is a question of legislative intent because Congress decides when, and under what conditions, federal courts can hear cases."). The Eleventh Circuit had also relied on *Booth* when concluding that "the district court was not authorized to read an exception, including one based on futility or the USCIS's actions, into [§ 1421(c)'s administrative-hearing] requirement." *Huang*, 468 F. App'x at 935 (citing 532 U.S. at 741 n.6).

Considering the statutory text and this principle, the *Abuirshaid* court reasoned:

> [C]ontrary to the Ninth Circuit's interpretation of the statute, § 1421(c) uses permissive language only with respect to the availability of Article III judicial review ("may seek review of such denial before the United States district court"), not with respect to the exhaustion requirement ("after a hearing before an immigration officer"). 8 U.S.C. § 1421(c). In other words, the exhaustion requirement is cast in absolute language. Thus, there is no textual basis for concluding that the § 1421(c) exhaustion requirement admits of a futility exception. Moreover, unlike the Second and Eleventh Circuits' interpretation, the Ninth Circuit's interpretation runs counter to the teaching of *Booth*. Accordingly, because Congress has mandated that a naturalization applicant must exhaust his administrative remedies before seeking judicial review, it is not appropriate for a court to "read futility or other exceptions" into § 1421(c). *Booth*, 532 U.S. at 741 n.6.

155 F. Supp. 3d at 616-17 (footnote omitted). The *Abuirshaid* court further noted that "[i]t makes perfect sense that the availability of judicial review is cast in permissive terms

because, as with all agency decision-making, a disappointed applicant is not *required* to seek further review of [the] agency's adverse decision if he has no interest in doing so." *Id.* at 616 n.7.

This Court finds the reasoning in *Abuirshaid* persuasive. Based on the statutory text and overall weight of the authority, the Court concludes that there is no futility exception available to Hamod and Al-Saadoon, and they must exhaust their administrative remedies before seeking judicial review under 8 U.S.C. § 1421(c). *See Huang*, 468 F. App'x at 935; *Abuirshaid*, 155 F. Supp. 3d at 617; *see also Escaler*, 582 F.3d at 292.

## 2. Review of *Nunc Pro Tunc* Relief

Hamod and Al-Saadoon also allege that jurisdiction exists over the denial *of nunc pro tunc* relief based on this Court's jurisdiction over federal questions and the APA. *See* 28 U.S.C. § 1331, 5 U.S.C. § 704. Hamod and Al-Saadoon allege that review of a denial of *nunc pro tunc relief* "is outside the ambit of direct Form N-400 denial review permitted pursuant to 8 U.S.C. § 1421(c)." (Am. Compl. ¶ 58.)

Defendants contend that there is no jurisdiction under the APA. Defendants argue that this Court lacks jurisdiction "because judicial review under the APA is explicitly limited to cases where there is no other adequate remedy in a court," and § 1421(c) provides Hamod and Al-Saadoon with a remedy. (Defs.' Mem. in Supp. at 17 (quotation omitted); *accord* Defs.' Reply at 4.) Defendants also point out that "the applicability of section 1255(i) waivers in this instance—and availability of *nunc pro tunc* relief—is the

16

basis of the agency's initial determination on [Hamod and Al-Saadoon's] naturalization applications." (Defs.' Reply at 2-3.)

Hamod and Al-Saadoon's attempt to separate the denial of *nunc pro tunc* relief from the decision on their naturalization applications is unpersuasive. Each denial states the following:

> To qualify for naturalization under INA § 316, you bear the burden of establishing by a preponderance of evidence that you meet all of the requirements for naturalization. 8 C.F.R. § 316.2(b). As the Eighth Circuit Court of Appeals has determined in a precedent decision that your admission to the United States on August 21, 2002, was not lawful, USCIS hereby denies your instant naturalization application on that same basis, to wit: you were not lawfully admitted to the United States on August 21, 2002, for the reasons contained in the Eighth Circuit decision.

> The record reflects that in connection with your N-400, you seek retroactive, or *nunc pro tunc*, relief in order to cure your unlawful admission through the filing of Form I-485 Supplement A, Adjustment of Status Under Section 245(i). The doctrine of *nunc pro tunc* is a far-reaching *equitable remedy*. *Iavorski v. USNIS*, 232 F.3d 124, 130 n.4 (2[d] Cir. 2000) (emphasis added); *Iouri v. Ashcroft*, 487 F.3d 76, 87 (2d Cir.[]2006).

> Your unlawful adjustment cannot be cured in these naturalization proceedings through the exercise of *equity*. *INS v. Pangilinan*, 486 U.S. 875, 885 (1988). Your *nunc pro tunc* request to cure your unlawful admission is therefore denied. " 'Once it has been determined that a person does not qualify for citizenship … [there is] *no discretion* to ignore the defect and grant citizenship.' " *Pangilinan at* 884 (quoting *Fedorenko v. United States*, 449 U.S. 490, 517 (1981)) (emphasis added).

> If you believe that you can overcome the grounds for this denial, you may submit a request for a hearing on Form N-336, Request for a Hearing on a Decision in Naturalization

> Proceedings, within 30 calendar days of service of this
> decision (33 days if this decision was mailed).

(Ex. A to Pls.' Opp'n at 2, 7-8.)  As the denials themselves show, the decision on *nunc*

*pro tunc* relief was part and parcel of the denial of the naturalization applications

themselves.

As for judicial review under the APA, the APA authorizes judicial review of final

agency actions "for which there is *no other adequate remedy in a court*."  5 U.S.C. § 704

(emphasis added); *accord Bowen v. Massachusetts*, 487 U.S 879, 891, 903 (1988);

*Johnson v. Vilsack*, 833 F.3d 948, 955 (8th Cir. 2016).  "Section 704 does not provide

additional judicial remedies in situations where Congress has provided special and

adequate review procedures." *Johnson*, 833 F.3d at 955 (quotation omitted).  Hamod and

Al-Saadoon have an adequate remedy available to them: judicial review under § 1421(c)

upon the exhaustion of their administrative remedies.  *Heslop v. Attorney General of*

*United States*, 594 F. App'x 580, 584 (11th Cir. 2014) (per curiam); *Maina v. Lynch*, No.

1:15-cv-00113-RLY-DML, 2016 WL 2594813, at *3 (S.D. Ind. July 5, 2016); *Khawaja*

*v. Mueller*, Civil Action No. H-11-3603, 2012 WL 1857849, at *6 (S.D. Tex. May 21,

2012).  "The APA does not authorize judicial review 'that adds to the sweeping *de novo*

review' that [§ 1421(c)] provides.'" *Heslop*, 594 F. App'x at 584 (quoting *Escaler*, 582

F.3d at 291 n.1).  Because Congress has already provided Hamod and Al-Saadoon with

an adequate remedy under § 1421(c), they cannot seek review of the denial of their

applications for naturalization under the APA.  *See Johnson*, 833 F.3d at 956 (judicial

review not authorized under APA where "Congress had provided an adequate alternative remedy under another statute").

### D. Conclusion

In sum, before seeking judicial review of an application for naturalization, the applicant is required to complete § 1447(a)'s hearing process. Seeking judicial review prior to receiving a decision following a § 1447(a) hearing amounts to a failure to exhaust the available administrative remedies. Hamod and Al-Saadoon's applications for naturalization have been denied. They have requested a § 1447(a) hearing and are in the midst of that process. Accordingly, Hamod and Al-Saadoon have not yet exhausted their administrate remedies. Because there is no futility exception to the hearing requirement or alternative avenue available for review of their naturalization applications under the APA, this Court lacks jurisdiction over their request to review the denial of their naturalization applications. Therefore, the Court recommends that this matter be dismissed for lack of jurisdiction. And, because this Court finds that it lacks subject matter jurisdiction, the Court declines to address Defendants' alternative arguments for failure to state a claim under Rule 12(b)(6) or Hamod and Al-Saadoon's request that USCIS be ordered to adjudicate their hearing requests, Forms N-336, within 30 days.

Alternatively, consistent with the principles of Rule 1 of the Federal Rules of Civil Procedure, if Hamod and Al-Saadoon are able to show that they have since received an unfavorable decision on their naturalization applications following a hearing before an immigration officer under § 1447(a), thus establishing that they have in fact exhausted

their administrative remedies, the Court recommends that they be given leave to supplement their Amended Complaint.  *See* Fed. R. Civ. P. 15(d).

## IV. RECOMMENDATION

Based upon the file, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss Amended Complaint (ECF No. 25) be **GRANTED**.


Dated: June___12____, 2017                    _____*s/ Tony N. Leung*_____
                                              Tony N. Leung
                                              United States Magistrate Judge
                                              for the District of Minnesota


                                              *Hamod et al. v. Kelly et al.*
                                              Case No. 16-cv-1191 (JRT/TNL)


## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).